UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHADAJE MOBLEY,

                            Petitioner,

        -against-                                          9:15-cv-1001 (LEK)

SHERYL ZENZEN,

                            Respondent.
_____

## DECISION and ORDER

## I.    INTRODUCTION

        Petitioner Shadaje Mobley ("Petitioner") filed a Petition for a writ of habeas corpus and

accompanying Exhibits pursuant to 28 U.S.C. § 2254, in which she argues: (1) she did not

knowingly waive her right to appeal; (2) her guilty plea was "improperly entered"; (3) the trial court

erred in denying her request for youthful offender adjudication; and (4) the imposed sentence was

harsh and excessive.  Dkt. No. 1 ("Petition") at 4-5.[1]  Respondent filed an Answer, Memorandum of

Law, and the relevant state court records.  Dkt. Nos. 7 ("Answer"); 7-1 ("Respondent

Memorandum"); 8 ("State Court Records").[2]  For the reasons that follow, the Petition is denied and

dismissed.

_____

        [1] The cited page numbers for the Petition refer to those generated by the Court's electronic
filing system ("ECF").  Petitioner's Exhibits include an incomplete copy of her direct appeal brief,
the Appellate Division's decision affirming her conviction, her application for leave to appeal to the
New York Court of Appeals, and the order denying leave.  Dkt. No. 1 at 7-35.  A complete copy of
Petitioner's direct appeal brief and the other documents provided by Petitioner are also part of the
state court record submitted by Respondent.  Dkt. No. 8 ("State Court Records") at 71-112, 180-
187, 189.  For the sake of clarity, the Court will cite to Docket Number 8 for these documents.

        [2] The cited page numbers for the State Court Records refer to the numbers generated by
Defendant at the bottom of the page.

## II. BACKGROUND

On December 8, 2010, an Onondaga County grand jury returned an indictment charging Petitioner, Kempton Taylor, and Kylan Taylor with two counts of second-degree burglary in violation of N.Y. Penal Law § 140.25(2). State Court Records at 126. The charges stemmed from Petitioner's involvement in the August 28, 2010 burglary of the Syracuse home of Janet Ridgeway ("Ridgeway"). Id.; People v. Mobley, 988 N.Y.S.2d 323 (App. Div. 2012). The Appellate Division, Fourth Department, briefly summarized the facts of the case:

> In her initial statement to the police, [Petitioner] stated that she, her fiancé and her fiancé's brother burglarized a home. She entered the home through a window late at night, and proceeded to open the door for the codefendants. [Petitioner] acted as a lookout while the codefendants took numerous items of property, including a credit card with a woman's name on it. The next day [Petitioner] used that credit card multiple times, amassing over $6,000 in charges.

Mobley, 988 N.Y.S. at 324.

On January 11, 2013, Petitioner agreed to plead guilty to one count of second-degree burglary and promised to testify truthfully against her co-defendants in exchange for a probation sentence and adjudication as a youthful offender. State Court Records at 9-10; Mobley, 988 N.Y.S. at 324. Petitioner assured the court during the plea colloquy that no promises other than those placed on the record were made to induce her plea. State Court Records at 11. She confirmed that she understood she was giving up the right to a jury trial, at which she could cross-examine the People's witnesses, testify, and call witnesses on her own behalf. Id. at 11-12. Petitioner stated that she understood a guilty plea had the same legal effect as if the court or a jury found her guilty after a trial, she was pleading guilty to a felony offense, and if she was not adjudicated as a youthful offender and was convicted of another felony within ten years, she was subject to a mandatory prison term. Id. at 12. Petitioner also confirmed that she understood she was giving up her right to

appeal.  <u>Id.</u> at 12-13.

Petitioner acknowledged that she was expected to give "truthful and accurate testimony" in any court proceeding on the case, and that meant she had to "give a truthful and accurate answer on any question put to [her]" whether the question related "to the charges filed in this indictment or not[.]" <u>Id.</u> at 13.  The court reiterated, and Petitioner indicated she understood, that the court would "make the decision about whether or not [she] gave truthful or accurate testimony . . . ." <u>Id.</u>  The court further explained that if it determined Petitioner's testimony was not truthful and accurate, it was not bound by the plea agreement and could sentence Petitioner to "state prison for up to fifteen years . . . ." <u>Id.</u> at 14.  Petitioner stated that she understood and still wanted to plead guilty.  <u>Id.</u>

Petitioner then admitted that on or about August 28, 2010, in the city of Syracuse, while acting in concert with her co-defendants, she knowingly entered or remained unlawfully in the dwelling of Janet Ridgeway with the intent to commit a crime inside.  <u>Id.</u> at 14.  She admitted that she went into the home to take something and had no right to do so.  <u>Id.</u> at 15.  The trial court accepted Petitioner's plea and granted her pretrial release.  <u>Id.</u> at 10, 15.  Petitioner was warned to abide by any terms and conditions of pretrial release supervision and was instructed to appear when the prosecutor needed her to prepare for trial.  <u>Id.</u> at 15.

"Due to problems the prosecutor was encountering," Petitioner "returned to court for an amplified allocution, during which [she] was sworn." <u>Mobley</u>, 988 N.Y.S. at 324.  Petitioner told the court that her statement to police, made on October 24, 2010, at 12:30 p.m., was truthful and accurate, and that Kempton and Kylan Taylor were with her when she went into Ridgeway's home and burglarized it.  State Court Records at 19-20.  Petitioner also confirmed that her brother, Anthony McLaughlin, had nothing to do with the burglary.  <u>Id.</u> at 21-22.  Petitioner's counsel told

the court she considered Petitioner's allocution to be "full and fair cooperation," and the court replied that Petitioner still had to cooperate at trial.  Id. at 24.

The week before her co-defendants' trial, Petitioner returned to court and was again "informed that her plea agreement was conditioned on her truthful testimony" at the trial.  Mobley, 988 N.Y.S. at 324; State Court Records at 26-27.

Petitioner testified at her co-defendants' trial on October 4 and 5, 2011.  State Court Records at 33.  She admitted that she pleaded guilty to second degree burglary in exchange for five years of probation, and acknowledged that if she did not testify truthfully, she faced a state prison sentence. Id. at 35-36.  Petitioner testified that Kempton Taylor was her fiancé and she had three children with him.  Id. at 35, 36-37.  She claimed she did not remember when she committed the burglary, but it was possibly in the summer of 2010.  Id. at 39-40.  Petitioner also testified she did not remember who was with her when she committed the burglary, and although her statement to police said she was with "Kempton and Kylan," she did not remember committing a burglary with them.  Id. at 42.

Petitioner then testified that she directed a detective to items in her home, including a pyramid, identification, a ring and a black purse, that did not belong to her.  Id. at 42-43.  She also admitted to signing Ridgeway's signature on several store receipts and that Kempton and Kylan Taylor were with her when she signed them.  Id. at 43-44.

In her October 5, 2011 testimony, Petitioner claimed she could not remember anything about the burglary.  Id. at 46-47.  She again admitted to signing Ridgeway's name on several store receipts, and that the credit card she used came from Ridgeway's black purse.  Id. at 48-49. Petitioner claimed she got the purse from her brother and that the Taylors had nothing to do with the purse or the stolen credit card she used.  Id. at 49.  Petitioner also confirmed the content of her

4

amplified allocution.  Id. at 58.

On cross-examination, Petitioner testified that she implicated the Taylors in order to cover for her brother's involvement in the burglary.  Id. at 61-62.  At the close of Petitioner's testimony, the court remanded her pending her sentencing date.  Id. at 62.  Kempton and Kylan Taylor were both acquitted.  Id. at 159.

On October 26, 2011, Petitioner appeared for sentencing.  Id. at 64.  Petitioner's counsel told the court Petitioner was expecting Kempton Taylor's child at the time of his trial, and was under "tremendous pressure to change her story . . . ."  Id. at 66-67.  Counsel further argued it did not "seem just or right" that Petitioner "should be sent to state prison while the codefendants have complete freedom."  Id. at 67.  Counsel asked the court to honor the plea agreement and impose a probation sentence and to adjudicate Petitioner a youthful offender.  Id. at 68.

The trial court pointed out that the Taylors were free "largely as a result of what [Petitioner] did here in this Courtroom."  Id. at 68.  The court reminded Petitioner of their discussions "about what was expected in terms of [her] truthful and accurate testimony," and stated that Petitioner "not only gave a completely different version under oath at the time of [her] plea, but then [she] came in and falsely testified in a way that resulted in what [the court thought] is a different verdict that would have resulted had [she] truthfully testified."  Id. at 69.  The court then told Petitioner:

> There aren't too many things . . . that I take more seriously than people testifying truthfully in this Courtroom when they have agreed to do so; and you are going to pay a very serious price for that; and the reason you're paying for it is, number one, because you came in here and lied under oath; and number two, so that people will understand if they're coming in to testify in these circumstances that there are consequences for coming in here and repudiating your agreement and lying under oath.

Id. at 69.  The court then sentenced Petitioner to a determinate term of seven years in prison followed by five years post-release supervision, and denied counsel's request to adjudicate her as a

5

youthful offender.  Id. at 69-70.

On direct appeal, Petitioner's counsel argued that: (1) Petitioner did not knowingly waive her right to appeal; (2) the guilty plea was "improperly entered" because the trial court failed to ensure that Petitioner "before pleading guilty, had a full understanding of her plea," and her testimony at her co-defendants' trial "undermined her guilt"; (3) the trial court improperly denied Petitioner youthful offender status; and (4) the sentence was harsh and excessive.  Id. at 71-111. The prosecutor opposed the appeal, arguing, among other things, that Petitioner's challenge to the validity of her plea was unpreserved because she did not move to withdraw it.  Id. at 149, 161.  In a reply brief, Petitioner's counsel argued that the case fell within a narrow exception to the preservation rule since there were serious questions as to the voluntariness of her plea and instances during her co-defendants' trial where she undermined her guilt.  Id. at 174.

On June 13, 2014, the Appellate Division affirmed.  Mobley, 988 N.Y.S. at 325.  The court agreed with Petitioner that her appeal waiver was invalid, but ruled that Petitioner "did not move to withdraw the plea or vacate the judgment of conviction, and therefore failed to preserve for our review her contention that the plea was not knowingly, voluntarily, and intelligently entered."  Id. at 324.  The Appellate Division further concluded that the case did not fall "within the rare exception to the preservation requirement because nothing in the plea allocution calls into question the voluntariness of the plea or casts significant doubt upon [her] guilt."  Id.

The Appellate Division also rejected Petitioner's claim that the trial court abused its discretion in denying her request for youthful offender status, and concluded that the sentence imposed was not unduly harsh or severe given the gravity of the crime, Petitioner's "attitude toward society and [her lack of] respect for the law."  Id. at 325.  The Appellate Division further concluded

that the sentence was not unduly harsh or severe, stating:

> [Petitioner] perjured herself, made a mockery of the criminal justice system and chose to violate her extremely advantageous plea agreement in an attempt to protect her fiancé and his brother. While we recognize that [Petitioner] was only 18 years old at the time of the offense and had no prior convictions, she was an intelligent young woman who made a deliberate choice, yet again, to violate the law for her own personal interests.

Id. Two justices dissented on the issue of whether Petitioner's sentence was unduly harsh, and would have reduced it to a determinate term of four years. Id. On January 20, 2015, a judge of the New York Court of Appeals denied leave to appeal. Mobley, 24 N.Y.3d 1121 (2015). This action followed.

## III.    DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1)-(2); Cullen v. Pinholster, 563 U.S. 170, 180-82 (2011); Premo v. Moore, 562 U.S. 115, 120-21 (2011); Schriro v. Landrigan, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with the [Supreme] Court's precedents.'" Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires a petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" (quoting Richter, 562 U.S. at 103)).

Additionally, AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Parker v. Matthews, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting Renico, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. Wood v. Allen, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro, 550 U.S. at 473.

Federal habeas courts must presume that the state court's factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." Id. at 473-74 (quoting § 2254(e)(1)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013).

### B. Challenge to the Validity of the Appeal Waiver

Petitioner reasserts the argument from her direct appeal that her appeal waiver was not

voluntarily and knowingly made. Pet. at 4. Because the Appellate Division agreed with Petitioner and did not apply the waiver to bar any of her claims on direct appeal, Ground One of the Petition is denied as moot. See Mobley, 988 N.Y.S.2d at 325.

**C. Challenge to Guilty Plea**

Petitioner argues in Ground Two of her Petition, as she did on direct appeal, that her plea was "improperly entered" because "the trial court failed in ensuring that [she] had a full understanding of her plea, prior to pleading guilty." Pet. at 4. Petitioner's claim is unexhausted and therefore procedurally defaulted. In any event, the Appellate Division's rejection of this claim rested on an adequate and independent state court ground that precludes federal habeas review.

*1. Exhaustion and Procedural Default*

An application for a writ of habeas corpus may not be granted until a petitioner exhausts all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings . . . ." Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).

To properly exhaust her claims, Petitioner must do so both procedurally and substantively. Procedural exhaustion requires that she raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that Petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v.

Reese, 541 U.S. 27, 29 (2004) (citations omitted).  Petitioner must also use the proper procedural

vehicle so that the state court may pass on the merits of her claims.  Dean v. Smith, 753 F.2d 239,

241 (2d Cir. 1985).

Here, Petitioner raised her current habeas claim on direct appeal.  Specifically, she argued

that her plea was invalid because her brief responses to the trial court's questions during the plea

colloquy "cast serious doubt on the knowing, voluntary and intelligent nature of [her] guilty plea."

State Court Records at 100-101.  Petitioner also argued on appeal that her testimony at her co-

defendants' trial "undermined her guilt."  Id.  The Appellate Division rejected both arguments on

procedural grounds, as described below, and Petitioner sought leave to appeal in the New York

Court of Appeals.  Id. at 184-86.

In his leave application, appellate counsel wrote that the ground raised in the leave

application was that the "trial court failed, in accordance with People v. Lopez (71 N.Y.2d 662), to

properly make further inquiry where [Petitioner] made comments at the trial of Kempton and Kylan

Taylor that negated her guilt."  Id. at 185.  Counsel claimed that Petitioner's "remarks" during the

trial "reflected that when she pled guilty she was merely covering for her brother," and the trial

court "did not make further inquiry as to what really occurred during the alleged incident . . . ."  Id.

at 185-86.  Therefore, counsel argued, Petitioner's case fell into the "rare exception to the

preservation requirement because there was significant doubt" about Petitioner's guilt.  Id. (citation

omitted).

Counsel also did not also argue that Petitioner's plea allocution cast doubt on the knowing

and voluntary nature of her plea.  Id. at 185-86.  Because appellate counsel argued only one claim in

the leave application, and did not ask the Court of Appeals to review Petitioner's current argument,

Ground Two was not fairly presented to the New York Court of Appeals. Ground Two is, therefore, unexhausted. See Ramirez v. Atty. Gen., State of N.Y., 280 F.3d 87, 96-97 (2d Cir. 2001) ("References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal."); Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000) ("Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims."); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (stating that if a petitioner's leave application specifically requested review of only one claim, all other claims would be deemed procedurally defaulted, even though the petitioner included his appellate brief in which the other claims were raised).

There is no remaining avenue by which Petitioner could properly exhaust Ground Two in state court. She cannot file a direct appeal or leave application in order to exhaust the claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division," and one application for leave to appeal to the Court of Appeals. Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). The facts that would support Petitioner's claim are based upon the record, and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." Id. at 91; see also Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) ("Even if no state court had applied section 440.10(2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas."); Sweet v. Bennett, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying N.Y. CRIM. PROC. LAW § 440.10(2)(c) to claims raised for the first time in a federal habeas petition). No remaining avenue exists in which Petitioner could properly present her current claim and, therefore, Ground Two is

deemed exhausted but procedurally defaulted.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991);

<u>Aparicio</u>, 269 F.3d at 90.

Procedurally defaulted claims are not subject to habeas review unless a Petitioner shows

cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in

a fundamental miscarriage of justice, i.e., that she is actually innocent.  <u>House v. Bell</u>, 547 U.S. 518,

536-39 (2006); <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995); <u>see</u> <u>Dunham v. Travis</u>, 313 F.3d 724, 730

(2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency.").  To

establish cause, Petitioner must show that some objective external factor impeded her ability to

comply with the relevant procedural rule.  <u>Maples v. Thomas</u>, 132 S. Ct. 912, 922 (2012); <u>Coleman</u>,

501 U.S. at 753.  If a petitioner fails to establish cause, a court need not decide whether she suffered

actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted

claims unless both cause and prejudice are demonstrated.  <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 496

(1986) (referring to the "cause-and-prejudice standard"); <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir.

1985) (same).

Petitioner does not assert any basis for finding cause to excuse her procedural default, and

the Court discerns none.  <u>See</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that

petitioner did not satisfy the cause and prejudice showing where he did not give any reason for

failing to properly exhaust his federal claim in state court).  Therefore, the Court need not decide

whether Petitioner will suffer actual prejudice before foreclosing habeas review.  <u>Carrier</u>, 477 U.S.

at 496; <u>Stepney</u>, 760 F.2d at 45.  Finally, Petitioner makes no argument that she is "actually

innocent" based upon newly discovered evidence.  <u>See</u> Pet.  Without a showing of cause and

prejudice, or a fundamental miscarriage of justice, Ground Two is procedurally defaulted.

## 2. Adequate and Independent State Court Ground

Even if Ground Two had been properly exhausted, federal habeas review is barred because the Appellate Division relied on an adequate and independent state ground to deny Ground Two. Substantive review of a habeas claim is prohibited if the state court rested its decision on "a state-law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 562 U.S. 307, 315 (2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009)). To qualify as an "adequate" ground, the state rule must be "firmly established and regularly followed." Id. at 316; Downs v. Lape, 657 F.3d 97, 101 (2d Cir. 2011) (explaining that habeas review of a state court's application of its own rules is deferential and is focused on whether the challenged ruling "falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct"). A rule can be firmly established and regularly followed "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Kindler, 558 U.S. at 61.

Under New York law, challenges to the voluntariness of a guilty plea must be presented to the state court in one of three ways: a motion to withdraw the plea before sentencing, a post-judgment N.Y. CRIM. PROC. LAW § 440.10 motion in the trial court, or on direct appeal if the record permits. N.Y. CRIM. PROC. LAW § 220.60(3); see also Lopez, 71 N.Y.2d at 665-66 ("In order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea . . . or a motion to vacate the judgment of conviction . . . ."). Absent a defect in the plea allocution, the failure to move to vacate a guilty plea in the trial court results in an unpreserved claim that is not reviewable in New York's appellate courts. Lopez, 71 N.Y.2d at 665-66.

Here, the Appellate Division applied these rules to preclude review of Petitioner's challenge to the validity of her plea, ruling that she "did not move to withdraw the plea or vacate the judgment of conviction . . . ." Mobley, 988 N.Y.S.2d at 325. The court further ruled that her case did not "fall within the rare exception to the preservation requirement because nothing in the plea allocution calls into question the voluntariness of the plea or casts 'significant doubt' upon [her] guilt." Id. (quoting People v. Robinson, 977 N.Y.S.2d 529, 529 (App. Div. 2013) (quoting Lopez, 71 N.Y.2d at 666).

In "exceptional cases," the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee v. Kemna, 534 U.S. 362, 376 (2002); see Garvey v. Duncan, 485 F.3d 709, 713-714 (2d Cir. 2006); Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003).[3] However, the Appellate Division's application of the preservation rule to Petitioner's challenge to the validity of her guilty plea was not exorbitant. New York courts, and federal courts in this and other districts in New York, have routinely recognized that the preservation rule provides an adequate and independent state ground on which to deny habeas relief. See Smith v. Superintendent of Wende Corr. Facility, No. 10-CV-0901, 2015 WL 1036328, at *7 (W.D.N.Y. Mar. 10, 2015) ("[T]he Appellate Division's determination that petitioner failed to preserve [his claim that his plea was not knowing and voluntary] for review renders the claim

---

[3] In determining whether the application of an independent state rule was "exorbitant," the court should consider: (1) whether the alleged procedural violation was actually relied upon by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law required compliance with the rule in the specific circumstances; and (3) whether the petitioner had "substantially complied" with the rule given the "realities of trial" and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. Garvey, 485 F.3d at 714 (quoting Cotto, 331 F.3d at 240). The Cotto factors are not all determinative but are a guide to evaluate the state's interest in a particular rule in the circumstances of a particular case. Id. at 714.

procedurally defaulted."), <u>appeal dismissed</u>, No. 15-880 (2d Cir. Sept. 22, 2015); <u>Belle v. Superintendent</u>, No. 11-CV-0657, 2013 WL 992663, at *5 (N.D.N.Y. Mar. 13, 2013) ("It is well settled in this Circuit that this preservation rule provides an adequate and independent state ground on which to deny habeas relief, and this Court agrees with the analysis contained in these decisions."); <u>Snitzel v. Murry</u>, 371 F. Supp. 2d 295, 300-301 (W.D.N.Y. 2004) ("The Court's review of the applicable case law confirms that New York courts routinely and regularly require defendants to make a motion in the trial court to withdraw their guilty plea or to vacate the judgment in order to preserve for appeal any claim relating to the validity of the plea itself.").

Because the Appellate Division explicitly invoked the preservation rule to bar appellate review of Petitioner's claim, federal habeas review is also barred unless she establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. <u>Maples</u>, 132 S. Ct. at 922; <u>House</u>, 547 U.S. at 536-39; <u>Murray</u>, 477 U.S. at 496. Petitioner failed to demonstrate that any external cause or prejudice exists to warrant setting aside her failure to comply with New York's preservation rule and she does not allege, nor does the Petition suggest, that she is actually innocent. <u>House</u>, 547 U.S. at 536-39. Ground Two is therefore dismissed.

### D. Petitioner's Sentencing Claims are not Cognizable[4]

Petitioner argues in Ground Three of her Petition that the trial court abused its discretion when denying her request for youthful offender adjudication. Pet. at 5. In Ground Four, Petitioner

---

[4] Respondent also argues that Petitioner's sentencing claims are unexhausted and procedurally defaulted because they were not presented to the New York Courts in Petitioner's leave application. Mem. at 22-23. Because the sentencing claims are not cognizable and are being denied on that ground, the Court declines to address these additional grounds for dismissal.

argues that her sentence was "harsh and excessive." Id. Neither claim is cognizable on federal habeas review.

Petitioner's claim that the sentence imposed was harsh and excessive is not cognizable because the sentence imposed was within the range prescribed by state law. Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. May 7, 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law."). At the time of Petitioner's sentencing, the trial court was authorized to sentence her to a determinate sentence ranging from 3 ½ to 15 years in prison for second degree burglary. N.Y. PENAL LAW §§ 70.02(1)(b), (3)(b), 140.25(2). Since the imposed sentence was within the statutory range, this theory cannot afford Petitioner relief. See Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.").[5]

The same is true of Petitioner's claim that the sentencing court abused its discretion by

---

[5] To the extent that Petitioner's claim could be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, that claim would also fail. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. Lockyer, 538 U.S. at 72-73; Harmelin v. Michigan, 501 U.S. 957, 995 (1991). A sentence that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. Ewing v. California, 538 U.S. 11 (2003); Harmelin, 501 U.S. 995. Petitioner's sentence was not contrary to or an unreasonable application of that precedent.

denying her youthful offender status. Under New York law, a defendant is eligible for youthful

offender status if he or she was between 16 and 19 years old at the time of the crime unless: the

crime is one of several felonies excluded by the statute; the defendant has a prior felony conviction;

or the defendant was previously adjudicated a youthful offender. N.Y. CRIM. PROC. LAW

§ 720.10(1), (2)(a)-(c). In most cases,[6] the decision whether to grant youthful offender status lies in

the discretion of the sentencing court. N.Y. CRIM. PROC. LAW § 720.20(1)(a); see also Jones v.

Perez, No. 14-CV-6502, 2015 WL 268917, at *2 (W.D.N.Y. Jan. 21, 2015) ("The decision whether

to grant youthful offender status to an eligible youth generally lies within the sound discretion of the

sentencing court.").

The United States Constitution "grants no independent due process right either to youthful

offender treatment or to any particular procedure for denying it, so long as the trial judge imposed a

sentence that was lawful under state law . . . ." Jones, 2015 WL 268917, at *2 (quoting Auyeung v.

David, No. 00-CV-1353, 2000 WL 1877036, at *3 (S.D.N.Y. Dec. 26, 2000)). As discussed above,

Petitioner's sentence was lawful under New York law. Therefore, the trial court's refusal to

adjudicate Petitioner as a youthful offender does not present a federal constitutional issue. Jones,

2015 WL 268917, at *2; Murphy v. Artus, No. 07-CV-9468, 2009 WL 855892, at *7 (S.D.N.Y.

Apr. 1, 2009). Accordingly, Grounds Three and Four of the Petition are denied and dismissed.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) for a writ of habeas corpus is **DENIED and**

---

[6] Youthful offender treatment is mandatory in some circumstances, which are not present in
this case. See N.Y. CRIM. PROC. LAW § 720.20(1)(b).

**DISMISSED**; and it is further

**ORDERED**, that no certificate of appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).[7] Any further request for a certificate of appealability must be addressed to the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22(b); and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 11, 2016
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[7] See <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) ("[Section] 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right . . . .'").